```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
EUGENE SMITH,

                         Plaintiff,

        -against-

P.O. JOHN A. ORTIZ, DET. WILLIAM            01 Civ. 5848 (DAB)
S. COLLINS, DET. HAROLD POGEWEIT,           MEMORANDUM & ORDER
SGT. CHRISTOPHER NAPOLITANO, P.O.
ALEXANDER MYLNARYK, P.O. JOHN KIERNAN,
COMMISSION HOWARD SAFIR, AND
ASSISTANT DISTRICT ATTORNEY
ELIZABETH V. ROECKELL, in their
official and individual capacities,

                         Defendants.
----------------------------------------X
DEBORAH A. BATTS, United States District Judge.
```

Plaintiff Eugene Smith brings this pro se action pursuant to 42 U.S.C. § 1983 against Defendants for alleged violations of his constitutional rights under the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments. Specifically, Plaintiff alleges claims of false arrest, excessive force, malicious prosecution, deprivation of his right to counsel, infliction of cruel and unusual punishment, and a violation of his due process and equal protection rights. Aside from former Police Commissioner Howard Safir and Assistant District Attorney Elizabeth Roeckell, Defendants are members of the New York City Police Department ("NYPD"). Defendants are being sued in both their individual and official capacities.

Defendants have moved for summary judgment pursuant to Fed. R. Civ. P. 56. They seek dismissal of the claims against them on the grounds that: (1) probable cause existed to preclude any malicious prosecution or false arrest claims; (2) Plaintiff has failed to bring forth any facts to support his excessive force claim; (3) Plaintiff's Sixth Amendment right to counsel had not attached at the time of the allegedly defective lineup; (4) Plaintiff's Eighth Amendment claim fails as a matter of law; (5) Plaintiff fails to state a claim under the Equal Protection Clause; (6) the individually named officers are entitled to qualified immunity; (7) Defendant Roeckell is entitled to absolute immunity; (8) Defendant Safir had no personal involvement in Plaintiff's case; and (9) any purported state claims are time-barred.

For the reasons set forth below, Defendants' Motion for Summary Judgment is GRANTED.

## I. BACKGROUND

Plaintiff's case is based on events surrounding his arrest and prosecution in state court for allegedly committing three burglaries.

The first burglary took place on October 18, 1997 at the residence of Mr. Philip Santise. (Defs.' 56.1 Stmt. ¶ 1;

2

Santiago Decl. at Exs. A, M.)  Mr. Santise came home and discovered that his backdoor screen was broken.  He then saw an unknown person flee from his home.  (Defs.' 56.1 Stmt. ¶¶ 1-12; Santiago Decl. at Exs. A, M.)  Mr. Santise's mother, Gwendoline Santise, reported the burglary to the New York City Police Department ("NYPD").  On November 3, 1997, Mr. Santise identified Plaintiff in a photo array as the person he saw fleeing from his home on the day of the burglary.  (Defs.' 56.1 Stmt. ¶¶ 3-4; Santiago Decl. at Exs. H, M.)

The second burglary took place on August 3, 1998 at the residence of Elizabeth Velez.  (Defs.' 56.1 Stmt. ¶¶ 7-8; Santiago Decl. at Exs. B, N.)  Ms. Velez and her son found their living room window open and a window screen cut in two places. (Defs.' 56.1 Stmt. ¶¶ 9-10; Exs. B, N.)  After Ms. Velez filed a complaint with the NYPD, Police Officer Mlynaryk took fingerprints from the window frame of the window with the cut screen. (Santiago Decl. at Exs. C, D.)

The third burglary took place on the morning of August 11, 1998 at the residence of Nicole Domenci.  Ms. Domenci saw Plaintiff removing items from her jewelry box and dresser.  When Plaintiff saw Ms. Domenci looking at him, he fled.  (Defs.' 56.1 Stmt. ¶¶ 16-17.)

On the evening of August 11, 1998, Plaintiff was arrested without a warrant at his brother's apartment in New York City. (Compl. at 4.) Both parties agree that Defendant Ortiz participated in Plaintiff's arrest; Plaintiff contends that Defendant Collins also participated in his arrest. (Id.; Defs.' 56.1 Stmt. ¶ 22.) During the arrest, no physical struggle ensued between Plaintiff and the arresting officer. (Pl.'s Dep. at 206.) The officer did not hit Plaintiff; Plaintiff did not sustain any physical injuries nor did he require any medical treatment as a result of his injuries. (Id. at 209.)

On August 12, 1998, Plaintiff was placed in a lineup. (Defs.' 56.1 Stmt. ¶ 26.) At that lineup, Mr. Santise, the victim of the October, 1997 burglary, and Ms. Domenci, the victim of the August 11, 1998 burglary, identified Plaintiff as the person who burglarized their homes. (Id. ¶¶ 4, 5, 18.) Also on that day, Officer Collins conducted a "latent fingerprint evaluation" of the fingerprints taken from Ms. Velez' window and matched them to Plaintiff's fingerprints. (Santiago Decl. at Exs. C, D.) After the lineup, Plaintiff was taken to Central Booking. (Pl.'s Dep. at 217.) Plaintiff was arraigned on two criminal complaints, charging him with three counts of Burglary in the Second Degree, two counts of Criminal Mischief in the Fourth Degree, one count of Grand Larceny in the Third Degree,

two counts of Criminal Possession of Stolen Property in the Third Degree, and one count of Petit Larceny. (Santiago Decl. at Exs. O, P.)

On August 17, 1998, the Grand Jury returned an indictment charging Plaintiff with three counts of Burglary in the Second Degree, three counts of Criminal Possession of Stolen Property in the Fifth Degree, two counts of Criminal Mischief in the Fourth Degree, two counts of Petit Larceny and one count of Grand Larceny in the Fourth Degree. (Id. at Ex. K.) Both Philip Santise and Elizabeth Velez testified before the Grand Jury. (Id. at Exs. M, N.)

Plaintiff was found not guilty by a jury on one count of Burglary in the Second Degree on June 27, 2000. (Compl. at Ex. C.) On November 1, 2000, Plaintiff was found not guilty of all remaining criminal charges. (Santiago Decl. at Ex. L.)

On May 25, 2001, Plaintiff filed his Complaint before this Court against Defendants.[1] After discovery, Defendants filed the

---

[1] At the time he filed this Complaint, Plaintiff also had another case pending in the Southern District of New York, before the Honorable Barbara S. Jones. That complaint arose out of allegations of abuse Plaintiff suffered by corrections officers after his arrest on August 11, 1998. The case before Judge Jones was dismissed on November 16, 2003, after a jury returned a verdict for remaining Defendant Captain Hayden. Plaintiff's appeal of that case was dismissed by the Second Circuit on July 19, 2004.

instant Motion for Summary Judgment, to dismiss all claims against them. In compliance with Fed. R. Civ. P. 56, Defendants served on Plaintiff a Statement Pursuant to Fed. R. Civ. P. 56.2.

II.  DISCUSSION

Defendants have moved for summary judgment for dismissal of the Complaint.

A.  Legal Standard

Summary judgment may be granted only when there is no genuine issue of material fact remaining for trial and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); see also, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986); Corselli v. Coughlin, 842 F.2d 23, 25 (2d Cir. 1988).

Under Fed. R. Civ. P. 56(c), "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  The Supreme Court has interpreted this to mean that, "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon

motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

As a general rule, "the court is to draw all factual inferences in favor of the party against whom summary judgment is sought, viewing the factual assertions . . . in the light most favorable to the party opposing the motion". Rodriguez v. City of New York, 72 F.3d 1051, 1061 (2d Cir. 1995); see also Consarc Corp. v. Marine Midland Bank, N.A., 996 F.2d 568, 572 (2d Cir. 1993). All ambiguities and all inferences drawn from the underlying facts must be resolved in favor of the party contesting the motion, and all uncertainty as to the existence of a genuine issue for trial must be resolved against the moving party. LaFond v. General Physics Servs. Corp., 50 F.3d 165, 171 (2d Cir. 1995). As is often stated, "[v]iewing the evidence produced in the light most favorable to the nonmovant, if a rational trier could not find for the nonmovant, then there is no genuine issue of material fact and entry of summary judgment is appropriate." Binder v. LILCO, 933 F.2d 187, 191 (2d Cir. 1991).

"[W]hen the plaintiff proceeds pro se, as in this case, a court is obliged to construe his pleadings liberally, particularly when [plaintiff] allege[s] civil rights violations."

Jacobs v. Ramirez, 400 F.3d 105, 106 (2d Cir. 2005). However, a pro se plaintiff is not relieved from the usual requirements of summary judgment, and a pro se party's "bald assertion," unsupported by evidence, is not sufficient to overcome a motion for summary judgment. Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991).

B. Fourth Amendment

Plaintiff has brought three specific claims of violations of his Fourth Amendment rights: false arrest, malicious prosecution and excessive force.[2]

1. False Arrest

Defendants have moved to dismiss the false arrest claim on the ground that probable cause existed at the time of Plaintiff's arrest.

A claim for false arrest under 42 U.S.C. § 1983, based on the Fourth Amendment right to be free from unreasonable seizures,

---

[2] Although Plaintiff does not allege unlawful entry in his Complaint, he does so in his opposition to Defendants' Motion for Summary Judgment. (Pl.'s Aff. ¶ 14.) Even if the Court recognized such a claim in Plaintiff's Complaint, Plaintiff lacks standing to bring a Fourth Amendment challenge to the officers' entry and search of his brother's apartment, as he did not have "an expectation of privacy in the place searched." United States v. Haqq, 278 F.3d 44, 47 (2d Cir. 2002).

is substantially similar to a claim for false arrest under state law. Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996). To prevail on a false arrest claim under New York state law, a plaintiff must show that (1) the defendant intended to confine him; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. See Watkins v. Doe, No. 04 Civ. 138, 2006 WL 648022 (S.D.N.Y. Mar. 14, 2006) (citing Jocks v. Tavernier, 316 F.3d 128, 134-35 (2d Cir. 2003). The existence of probable cause "is an absolute defense to a false arrest claim . . . ." Caldarola v. Calabrese, 298 F.3d 156, 161 (2d Cir. 2002) (applying New York law); see also Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004) ("Because probable cause to arrest constitutes justification there can be no claim for false arrest where the officer had probable cause to arrest the plaintiff.").

In general, probable cause to arrest exists when the arresting officer has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Escalera, 361 F.3d at 743 (citation omitted). "Generally, information provided by an identified citizen accusing another

individual of a specific crime is legally sufficient to provide the police with probable cause to arrest" that individual. Iorio v. City of New York, 19 A.D. 3d 452, 453 (2d Dep't 2005). "[C]ourts must consider those facts available to the officer at the time of the arrest and immediately before it." Caldorola, 298 F.3d at 162. The question of whether probable cause existed is determinable as a matter of law "if there is no dispute as to the pertinent events and the knowledge of the officers." Weyant, 101 F.3d at 852. Furthermore, "[t]he validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest." Michigan v. DeFillippo, 443 U.S. 31, 36 (1979).

Plaintiff was identified in a photo array on November 3, 1997, by Mr. Santise, the victim of the October 18, 1997 robbery. Plaintiff's arguments in support of his false arrest claim seem to be that he was never arrested at a crime scene, and that he was eventually found not guilty of the charges against him. (Pl.'s Aff. ¶¶ 8, 11.) However, neither of these arguments address the fact that police officers had probable cause based on Mr. Santise's identification of Plaintiff in a photo array. Based on this identification, the arresting officers had probable

cause to arrest him.[3]  Accordingly, because probable cause is an absolute defense to a claim of false arrest, Plaintiff's claim of a Fourth Amendment violation based on false arrest fails.

2. Malicious Prosecution

Defendants move to dismiss Plaintiff's malicious prosecution claim on the grounds that a Grand Jury indicted Plaintiff, creating a presumption of probable cause, and because probable cause actually existed.

As in claims for false arrest under § 1983, claims of malicious prosecution under § 1983 are substantially the same as those brought under state law.  See Watkins, 2006 WL 648022, at *5.  In New York, the elements of malicious prosecution are: (1) that the defendant initiated the prosecution action against plaintiff; (2) that the defendant lacked probable cause to

---

[3] Defendants argue that the identification of Plaintiff in a lineup on August 12, 1997 by the burglary victims of the August 3 and August 11, 1998 burglaries and the fact that Plaintiff's fingerprints were found on the windowsill of the home of the victim of the August 3, 1998 burglary, also support the argument that the arresting officer had probable cause to arrest Plaintiff.  (Defs.' Mem. Law at 7-8.)  Defendants, however, err in relying on these facts, and seem to essentially be making a type of "hindsight is 20/20" argument.  The lineup and the fingerprint analysis were conducted on August 12, 1998, the day after Plaintiff was arrest, and hence, cannot be considered as information arresting officers had at the time of Plaintiff's arrest, or before the arrest.

believe the prosecution could succeed; (3) that defendant acted with malice; and (4) that the prosecution was terminated in plaintiff's favor. Id.

The Court has already determined that the arresting officers had probable cause to arrest Plaintiff based on the identification of Plaintiff in November, 1997.[4] Hence, because Plaintiff cannot establish the second element of a malicious prosecution claim, Plaintiff's malicious prosecution claim also fails.

3. Excessive Force

Defendants move to dismiss Plaintiff's excessive force claim because there are no facts in Plaintiff's Complaint, or in his deposition to support such a claim, nor has Plaintiff alleged any injuries.

The Fourth Amendment's prohibition against the use of excessive force in the course of an arrest was established by the Supreme Court in Graham v. Connor, 490 U.S. 386, 394-95 (1989). To comport with the Fourth Amendment when effectuating an arrest, an officer's use of force must be objectively reasonable in light

---

[4] A presumption of probable cause was also created by the indictment of Plaintiff by a Grand Jury for the three burglaries. See O'Donnell v. County of Nassau, 7 A.D.3d 590, 591 (2d Dep't 2004) (collecting cases).

of the facts and circumstances confronting him and without regard to his underlying intent or motivation. Id. at 397. This objective reasonableness standard is applied using a totality of the circumstances approach that includes an examination of the severity of the crime at issue, the immediate threat the suspect poses to the officer and others, and whether the suspect is resisting arrest or attempting to flee. Graham, 490 U.S. at 396; see also Sullivan, 225 F.3d 161, 165 (excessive force "subject to an objective test of reasonableness under the totality of the circumstances"). Courts must consider the specific facts in each case and balance these facts against the suspect's Fourth Amendment rights. Graham, 490 U.S. at 396. Thus, to prevail on a motion for summary judgment in an excessive force case, the evidence must show that "no rational jury could [find] that the force used was so excessive that no reasonable officer would have made the same choice." Lennon v. Miller, 66 F.3d 416, 426 (2d Cir. 1995).

In this case, Plaintiff states in his Complaint that Defendants violated his Fourth Amendment right to be free of excessive use of force. (Compl. at 6.) No other facts are set forth in the Complaint concerning Defendants' alleged use of excessive force. Although Plaintiff later alleges in his opposition to Defendants' summary judgment motion, that the

arresting officers used excessive force because they had "their weapons and guns drawn," (Pl.'s Aff. ¶ 15), in his deposition, Plaintiff stated that there was no struggle with the officer at the time of his arrest. Plaintiff also stated in his deposition that medical treatment was "not necessary" and answered "Correct" when asked if he did not seek medical treatment because nothing requiring medical treatment had occurred at the time of his arrest. (Pl.'s Dep. at 209.) Plaintiff also stated that the arresting officer did not hit him, and that he did not suffer any physical injuries from the arrest. (Id. at 212, 232.)

It is clear that no reasonable fact finder would find that any excessive force was used at the time of Plaintiff's arrest. Accordingly, Plaintiff has failed to state a claim for excessive force.

C. Eighth Amendment

Plaintiff claims that law enforcement officials at the police precinct subjected him to cruel and unusual punishment in violation of the Eighth Amendment (Pl.'s Aff. ¶ 14.)

A plaintiff may state a claim under the Eighth Amendment only if he or she has been adjudged guilty by a criminal proceeding at the time of the events giving rise to the Eighth Amendment claim. See Ingraham v. Wright, 430 U.S. 651, 671-72

(1977); accord City of Revere v. Massachusetts General Hospital, 463 U.S. 239 (1983).

Plaintiff was never adjudged guilty for the crimes charged. Accordingly, Plaintiff's Eighth Amendment claim fails as a matter of law.

D. Sixth Amendment

Plaintiff argues that his Sixth Amendment right to counsel was violated by Defendants when they denied him access to his lawyer during his post-arrest lineup.[5] (Pl.'s Aff. ¶ 87.)

Defendants argue that this claim should be dismissed because Plaintiff's Sixth Amendment right to counsel did not attach until after criminal proceedings against him were initiated.

The Sixth Amendment provides that "In all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." U.S. Const. amend. VI. Although under New York law, a defendant who is in custody for a

---

[5] To the extent that Plaintiff's right to counsel claim is brought also under the Fifth Amendment, Plaintiff has failed to make such a claim as the Fifth Amendment right to counsel attaches only when the defendant is under interrogation. See Miranda v. Arizona, 384 U.S. 436, 470 (1966). Compelled participation in a lineup is not testimonial or communicative and hence, does not implicate the Fifth Amendment right to counsel. United States v. Wade, 388 U.S. 218, 221-23 (1967). Plaintiff makes no claim that he was interrogated by the officers and was denied counsel upon request during an interrogation.

crime for which he has counsel, may not, in the absence of his attorney, waive the right to counsel, even if the police seek to question him about an unrelated crime, see People v. Burdo, 91 N.Y. 2d 146 (1997), Plaintiff has filed a case before this Court and federal law applies. See United States v. Turner, 558 F.2d 46, 49 (2d Cir. 1977). Under federal law, the right to counsel under the Sixth Amendment does not attach until formal criminal proceedings are initiated. See McNeil v. Wisconsin, 501 U.S. 171, 175 (1991).

Plaintiff was placed in a lineup on August 12, 1998, after his arrest. Plaintiff stated in his deposition that *after* the lineup, he was taken to Central Brooking, processed and then arraigned on charges. (Pl.'s Dep. at 217.) Because no charging instrument had been filed against Plaintiff by the time he was placed in a lineup, his Sixth Amendment right to counsel had not yet attached. Accordingly, Plaintiff has failed to state a violation of the Sixth Amendment.

E. Due Process Clause and Equal Protection Clause

Plaintiff has also stated that he was deprived of his procedural and substantive due process rights by Defendants. Specifically, Plaintiff states that Defendants used an "impermissibly suggestive" identification procedure when he was

16

placed in the lineup. (Pl.'s Aff. ¶ 33.) Plaintiff has also stated in his Complaint that his right to equal protection was violated.

Defendants have not moved to dismiss any due process claims raised by Plaintiff, but the Court is permitted to <u>sua sponte</u> dismiss claims it deems frivolous or if no claim has been stated. <u>See</u> <u>Liner v. Goord</u>, 196 F.3d 132, 134 & n.1 (2d Cir. 1999).

Pre-trial identification procedures "violate[] due process if the procedure[s] [are] so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." <u>Jarrett v. Headley</u>, 802 F.2d 34, 40-41 (2d Cir. 1986) (quoting <u>Simmons v. United States</u>, 390 U.S. 377, 384 (1969). Moreover, "a suggestive procedure does not in itself intrude upon a constitutionally protected interest." <u>Wray v. Johnson</u>, 202 F.3d 515, 524 (2d Cir. 2000) (quoting <u>Manson v. Brathwaite</u>, 432 U.S. 98, 133, n.13 (1977). An accused must also demonstrate that the impermissibly suggestive identification procedure deprived him of the right to a fair trial. <u>Wray</u>, 202 F.3d at 524.

Plaintiff has not stated any facts in his Complaint or in the record that would suggest that the lineup was impermissibly suggestive, other than in conclusory terms. In addition,

17

Plaintiff was acquitted of all charges against him (Santiago Decl. at Ex. L.)

Furthermore, Plaintiff has failed to set forth any facts or allegations supporting a substantive due process or equal protection claim.

F.  State Law Claims

Plaintiff's Complaint does not appear to contain any state law claims.  However, in his opposition, he makes clear that he intended to include state law claims based on New York General Municipality Law §§ 50(e) and 50(i) in his Complaint.  (Pl.'s Aff. ¶ 81.)

Defendants argue that to the extent the Court construes Plaintiff's Complaint to include state law claims, that those claims should be dismissed as time-barred.  Plaintiff responds by stating that he filed the state claims out of time because he sent all documents and information concerning the state law claims to an attorney who was considering taking Plaintiff's case.  Plaintiff has attached documentation of this request.

However, upon review of Plaintiff's submissions, the Court notes that the letter to the attorney asking the attorney to handle the case, along with copies of the claim and a brief

statement of facts, was dated August 31, 2000, more than two years after the arrest that is the subject of Plaintiff's claims.

The New York General Municipal Law requires that all personal injury claims brought against a city or any of its officers, agents or employees must be commenced within one year and ninety days after the occurrence of the event upon which the claim is based. N.Y. Gen. Municipal Law § 50-i. Plaintiff clearly did not file these claims in time, as he filed this suit on June 4, 2001. His reason for filing any state claims under N.Y. General Municipal Law out of time is not persuasive as the date of the letter to the attorney was also past the date allowed under the applicable statute of limitations.

### III. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is GRANTED.

The Clerk of the Court is DIRECTED to close this case and remove it from the docket.

SO ORDERED.

Dated: New York, New York
May 25, 2006

*Deborah A. Batts*
DEBORAH A. BATTS
United States District Judge

19